IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **22-14056-HH**

United States of America,

Appellee,

- versus -

Kerby Brown, Jr.,

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

# BRIEF FOR THE UNITED STATES

Markenzy Lapointe
United States Attorney
Attorney for Appellee
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9285

Daniel Matzkin
Chief, Appellate Division

Robert Juman
Assistant United States Attorney

Nicole D. Mariani
Assistant United States Attorney

Of Counsel

**United States v. Kerby Brown, Jr., Case No. 22-14056-HH**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities who have an interest in the outcome of this case:

Aronovitz, Cary Oren

Brown, Jr., Kerby

Brown, Richard O.I.

Butlien, Peter A.

Caruso, Michael

Castro, Monika K.

Cohn, Hon. James I.

Dimitrouleas, Hon. William P.

Fajardo Orshan, Hon. Ariana

Fisher, Joshua Loren

Gonzalez, Juan Antonio

Grosnoff, Nicole

**Hapner, Adam**

Horenstein, Bradley Evan

Hunt, Hon. Patrick M.

**United States v. Kerby Brown, Jr., Case No. 22-14056-HH**

**Certificate of Interested Persons (Continued)**

**Johannes, Vanessa**

**Juman, Robert C.**

**Lapointe, Markenzy**

Levin, Albert Zachary

**Mariani, Nicole D.**

**Matzkin, Daniel**

Minor Victim 1

Minor Victim 2

Minor Victim 3

Nelson, Kirsten R.

Noto, Kenneth

Padilla, Joaquin E.

Ravindran, Iva Uroic

Reboso, Manolo

Rubio, Lisa Tobin

Smith, Hon. Rodney

Smukler, Elena

Valle, Hon. Alicia O.

**United States v. Kerby Brown, Jr., Case No. 22-14056-HH**

**Certificate of Interested Persons (Continued)**

Villar, Jorge Luis Del

Vora-Puglisi, Sabrina D.

/s/Nicole D. Mariani
Nicole D. Mariani
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States of America respectfully suggests that the briefs and record before this Court adequately present the facts and legal arguments and that oral argument would not significantly aid the decisional process.

## Table of Contents

**Page**:

Certificate of Interested Persons ....................c-1

Statement Regarding Oral Argument ....................i

Table of Contents .................... ii

Table of Citations ....................v

Statement of Jurisdiction .................... xiii

Introduction ....................1

Statement of the Issues....................2

Statement of the Case:

1. Course of Proceedings and Disposition in the Court Below ....................3
2. Statement of the Facts ....................6
3. Standards of Review ....................13

Summary of the Argument ....................14

Argument:

I. Brown's Convictions for Conspiring to Sex Traffic a Minor and for Attempting to Sex Traffic Minor Victim 1 Were Supported by Sufficient Evidence....................15

A. Brown Conspired with Archer to Sex Traffic a Minor....................16

B. Brown Attempted to Sex Traffic Minor Victim 1 ....................20

**Table of Contents**

**(Continued)**

**Page:**

Argument:

II. The District Court Did Not Reversibly Err in Admitting Excerpts from Archer's iPhone Records ....23

A. Only Government Exhibits 47A, 47C, 47D, 47E-1, 47F, 47G, 47H, 47J, 47L, 47M, 47N, 47O, and 47P Were Admitted into Evidence ....24

B. The District Court Did Not Abuse Its Discretion in Admitting Excerpts from Archer's iPhone Records Under Rules 403, 404(b), or 802. ....25

1. Government Exhibit 47A ....27

2. Government Exhibit 47C ....28

3. Government Exhibit 47D ....29

4. Government Exhibit 47E-1 ....30

5. Government Exhibits 47F, 47G, and 47H ....32

6. Government Exhibit 47J ....32

7. Government Exhibits 47L through 47P ....33

C. The District Court Did Not Plainly Err in Failing to Spontaneously Find Archer's iPhone Records Violated Brown's Confrontation Clause Rights ....34

D. Any Evidentiary Error Was Harmless ....36

**Table of Contents**

**(Continued)**

**Page:**

Argument:

III. The District Court Did Not Manifestly Abuse Its Discretion When It Declined to Strike the Venire After It Read a Prior Version of the Conspiracy Charge ....................37

VI. The District Court Did Not Err in Denying Brown's Pro Se Motions to Dismiss His Indictment under the Speedy Trial Act ....................41

A. The District Court Properly Denied Brown's Pro Se Motions Because He Was Represented by Counsel ....................43

B. The District Court's Ends-of-Justice Continuances Were Excluded under the Speedy Trial Act....................44

Conclusion ....................53

Certificate of Compliance ....................54

Certificate of Service ....................55

**Table of Citations**


**<u>Cases</u>:** **<u>Page</u>:**

*Sapuppo v. Allstate Floridian Ins. Co.*,

739 F.3d 678 (11th Cir. 2014) .......................................................................23

*United States v. Ammar*,

842 F.3d 1203 (11th Cir. 2016) ........................................................ 42, *passim*

*United States v. Anderson*,

329 F. App'x 878 (11th Cir. 2009) ..................................................................40

*United States v. Arbolaez*,

450 F.3d 1283 (11th Cir. 2006) .......................................................................13

*United States v. Augustin*,

661 F.3d 1105 (11th Cir. 2011) .......................................................................13

*United States v. Calderon*,

127 F.3d 1314 (11th Cir. 1997) .......................................................................16

*United States v. Campbell*,

26 F.4th 860 (11th Cir. 2022) ..........................................................................23

*United States v. Capers*,

708 F.3d 1286 (11th Cir. 2013) .......................................................................15

**Table of Citations**

**(Continued)**


**<u>Cases</u>:** **<u>Page</u>:**

*United States v. Caraballo*,

595 F.3d 1214 (11th Cir. 2010) ........................................................ 35, 36

*United States v. Carr*,

607 F. App'x 869 (11th Cir. 2015)........................................................36

*United States v. Christopher*,

923 F.2d 1545 (11th Cir. 1991) ........................................................27

*United States v. Cooper*,

926 F.3d 718 (11th Cir. 2019) ........................................................23

*United States v. Cruz*,

805 F.2d 1464 (11th Cir. 1986) ........................................................31

*United States v. Dale*,

618 F. App'x 494 (11th Cir. 2015)........................................................44

*United States v. Dodds*,

347 F.3d 893 (11th Cir. 2003) ........................................................27

*United States v. Dunn*,

--- F.4th ----, 2023 WL 6571302 (11th Cir. Oct. 10, 2023) ................................49

## Table of Citations

## (Continued)

**Cases:** **Page:**

*United States v. Elledge*,

723 F.2d 864 (11th Cir. 1984) .......... 17

*United States v. Flores*,

572 F.3d 1254 (11th Cir. 2009) .......... 27, 30, 31

*United States v. Green*,

396 F. App'x 573 (11th Cir. 2010) .......... 36

*United States v. Hands*,

184 F.3d 1322 (11th Cir. 1999) .......... 36

*United States v. Harris*,

886 F.3d 1120 (11th Cir. 2018) .......... 29, 32

*United States v. Issacson*,

752 F.3d 1291 (11th Cir. 2014) .......... 44

*United States v. Jenkins*,

779 F.2d 606 (11th Cir. 1986) .......... 26, 31

*United States v. Jeri*,

869 F.3d 1247 (11th Cir. 2017) .......... 13

**Table of Citations**

**(Continued)**

**Cases:** **Page:**

*United States v. Jiminez*,

564 F.3d 1280 (11th Cir. 2009) .......................................................... 16, *passim*

*United States v. Joseph*,

806 F. App'x 839 (11th Cir. 2020) ..........................................................38

*United States v. Keith*,

61 F.4th 839 (10th Cir. 2023) ..........................................................50

*United States v. Khoury*,

901 F.2d 948 (11th Cir. 1990) ..........................................................38

*United States v. Leveke*,

838 F.4th 662 (8th Cir. 2022) ..........................................................50

*United States v. Magluta*,

418 F.3d 1166 (11th Cir. 2005) ..........................................................36

*United States v. Mathis*,

96 F.3d 1577 (11th Cir. 1996) .......................................................... 43, 53

*United States v. Mathis*,

767 F.3d 1264 (11th Cir. 2014) ..........................................................35

## Table of Citations

## (Continued)

**Cases:** **Page:**


*United States v. Miller*,

796 F. App'x 582 (11th Cir. 2019)....................43

*United States v. Mozie*,

752 F.3d 1271 (11th Cir. 2014)....................16

*United States v. Munoz*,

16 F.3d 1116 (11th Cir. 1994)....................26

*United States v. Peters*,

435 F.3d 746 (7th Cir. 2006)....................40

*United States v. Ramsdale*,

61 F.3d 825 (11th Cir. 1995)....................26

*United States v. Register*,

182 F.3d 820 (11th Cir. 1999)....................43

*United States v. Rivera*,

780 F.3d 1084 (11th Cir. 2015)....................26

*United States v. Root*,

296 F.3d 1222 (11th Cir. 2002)....................20

## Table of Citations

## (Continued)

**<u>Cases</u>:** **<u>Page</u>:**

*United States v. Sanchez*,

586 F.3d 918 (11th Cir. 2009) .................................................. 28, *passim*

*United States v. Serrano*,

197 F. App’x 906 (11th Cir. 2006) ..................................................43

*United States v. Silvestri*,

409 F.3d 1311 (11th Cir. 2005) ..................................................17

*United States v. Stitzer*,

785 F.2d 1506 (11th Cir. 1986) ..................................................43

*United States v. Tegzes*,

715 F.3d 505 (11th Cir. 1983) ..................................................37

*United States v. Torres*,

995 F.3d 695 (9th Cir. 2021) ..................................................50

*United States v. Trujillo*,

146 F.3d 838 (11th Cir. 1998) .................................................. 13, 40

*United States v. U.S. Infrastructure, Inc.*,

576 F.3d 1195 (11th Cir. 2009) ..................................................27

**Table of Citations**

**(Continued)**

**Cases:** **Page:**

*United States v. Underwood*,

446 F.3d 1340 (11th Cir. 2006) ....................................................................35

*United States v. Vera*,

701 F.2d 1349 (11th Cir. 1983) ....................................................................16

*United States v. Watts*,

896 F.3d 1245 (11th Cir. 2018) ............................................................ 13, 15

*United States v. Wenxia Man*,

891 F.3d 1253 (11th Cir. 2018) ....................................................................24

*United States v. Williams*,

314 F.3d 552 (11th Cir. 2002) ......................................................... 14, 41, 42

*Zedner v. United States*,

547 U.S. 489 (2006) ........................................................................... 42, 52

**Statutes & Other Authorities:**

18 U.S.C. § 1591 ................................................................................ 15, 16

18 U.S.C. § 1594 ....................................................................................3, 4

18 U.S.C. § 3161 ........................................................................ 41, *passim*

18 U.S.C. § 3162 ................................................................................ 43, 49

## Table of Citations

## (Continued)

**Statutes & Other Authorities:** **Page:**

18 U.S.C. § 3231 .......... xiii

28 U.S.C. § 1291 .......... xiii

Fed. R. App. P. 26 .......... c-1

Fed. R. App. P. 32 .......... 54

Fed. R. App. P. 4 .......... xiii

Fed. R. Evid. 403 .......... 2, 23, 27

Fed. R. Evid. 404 .......... 25

Fed. R. Evid. 801 .......... 26, *passim*

Fed. R. Evid. 802 .......... 26

Fed. R. Evid. 803 .......... 28, *passim*

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Southern District of Florida in a criminal case. The district court entered judgment against Kerby Brown, Jr. on November 18, 2022 (DE:196). The district court had jurisdiction to enter the judgment under 18 U.S.C. § 3231. Brown filed a timely notice of appeal on December 1, 2022 (DE:198). *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## Introduction

Kerby Brown does not dispute that he recruited teenage girls to become child prostitutes under his control, yet he appeals his child sex trafficking convictions. Brown's appeal, however, is easily rejected. First, Brown's sufficiency arguments—that the government did not prove that he agreed with Heidy Archer to sex traffic children or that Minor Victim 1 was one of his victims—are easily rejected because of the standard of review. This Court must defer to the jury's credibility findings, and the jury believed Child Witness' and Minor Victim 2's testimony that Brown and Archer recruited them to be prostitutes, Minor Victim 2's testimony that Brown and Archer maintained her as a prostitute, Minor Victim 2's testimony that Brown told her he was prostituting Minor Victim 1, and a police officer's testimony that he saw a prostitution advertisement for Minor Victim 1 and rescued Minor Victim 1 from Brown. Second, Brown's evidentiary arguments are easily rejected because of the facts. The excerpts from Exhibit 47 that were admitted into evidence did not contain prior bad acts evidence, testimonial hearsay, or unduly prejudicial evidence. Finally, Brown's jury bias and Speedy Trial Act arguments are easily rejected because of the law. Brown did not show his venire suffered actual bias, and Brown improperly filed the *pro se* motions raising his Speedy Trial Act arguments while he was represented by counsel and while less than 70 non-excluded days had elapsed.

## Statement of the Issues

I. Whether sufficient evidence supports Brown's convictions for conspiring to sex traffic a minor and for attempting to sex traffic Minor Victim 1 where victims testified that Brown and Archer together recruited and maintained child prostitutes, Child Witness testified that Brown told her that Minor Victim 1 was one of his child prostitutes, and Child Witness and a police officer testified that they saw a prostitution advertisement for Minor Victim 1.

II. Whether, in admitting excerpts from Archer's iPhone records, the district court reversibly erred by either abusing its discretion in applying Federal Rules of Evidence 403, 404(b), and 802 or plainly erring in ensuring the Confrontation Clause was followed.

III. Whether the district court manifestly erred in declining to strike the venire after it read aloud a prior version of Brown's conspiracy charge where Brown never argued any juror was actually biased and where Brown's jury was instructed that the indictment was not evidence and was provided with the correct charge.

IV. Whether the district court erred in denying Brown's five *pro se* motions to dismiss his indictment under the Speedy Trial Act where he was represented by counsel when he filed those motions and where less than 70 non-excluded days elapsed between his arraignment and his final motion to dismiss.

## Statement of the Case

### 1. Course of Proceedings and Disposition in the Court Below

On February 13, 2020, a Southern District of Florida grand jury charged Brown with conspiracy to sex traffic Minor Victim 1, Minor Victim 2, and Minor Victim 3, in violation of 18 U.S.C. § 1594 (Count 1); attempted sex trafficking of Minor Victim 1, in violation of 18 U.S.C. § 1594(a) (Count 2); sex trafficking of Minor Victim 2, in violation of 18 U.S.C. § 1594 (Count 3); and attempted sex trafficking of Minor Victim 3, in violation of 18 U.S.C. § 1594 (Count 4) (DE:10).

Following that indictment, and despite being represented by a rotation of counsel,[1] Brown filed five *pro se* motions to dismiss his indictment because he believed that his rights under the Speedy Trial Act were violated when the district court granted the ends-of-justice continuances that his counsel requested (DE:27; DE:73; DE:86; DE:93; DE:111). The district court immediately struck three of those motions because Brown was represented by counsel (DE:29; DE:87; DE:94). Because the government responded to one of the motions, outlining that only 26 non-excluded days would pass between Brown's pre-COVID arraignment and his post-COVID scheduled trial (DE:78), the district court entered an order summarily denying that *pro se* motion for the reasons provided in the government's filing

[1] Before trial, Brown changed his court-appointed counsel five times (DE:112:5-12; DE:149).

(DE:79). As to Brown's final *pro se* motion to dismiss, the district court did not immediately enter an order striking it, instead admonishing Brown about his repetitive *pro se* filings at the next calendar call and then denying that motion (DE:118; DE:119; DE:150:5-6).

On May 12, 2022, a Southern District of Florida grand jury returned a superseding indictment that removed Minor Victim 3 (DE:133). The Superseding Indictment charged Brown with conspiracy to commit sex trafficking of a minor between November 21, 2018 and May 23, 2019, in violation of 18 U.S.C. § 1594 (Count 1); attempted sex trafficking of Minor Victim 1 from November 21 through November 24, 2018, in violation of 18 U.S.C. § 1594(a) (Count 2); and sex trafficking of Minor Victim 2 from January 25 through February 13, 2019, in violation of 18 U.S.C. § 1594 (Count 3) (DE:133).

On August 8, 2022, Brown's trial began (DE:203).

At the beginning of jury selection, the district court read the charges against Brown (DE:203:19). After the district court begin reading the conspiracy charge—saying Brown conspired to sex traffic "Minor Victim Number 1, Minor Victim Number 2, and Minor Victim Number 3"—the government interrupted and told the district court and the venire that the conspiracy charge had been superseded (DE:203:19). The district court apologized and then read the superseding conspiracy

charge, which alleged Brown conspired to sex traffic "a person" who was a minor (DE:203:20).

Brown moved to strike the venire, contending that a juror could be curious as to why three minor victims were no longer specified in the conspiracy charge (DE:203:55). The government opposed the motion, explaining that, although the number of victims were no longer specified in the conspiracy charge, the jury would hear evidence that Brown conspired to sex traffic at least five minors (DE:203:56-58). Thus, the government concluded, no bias could arise from the jury knowing the government had previously alleged Brown conspired to sex traffic three victims (DE:203:56-58). The district court denied Brown's motion, explaining Brown's claim was speculative and he had shown no juror bias (DE:203:62). In its jury instructions, the district court repeatedly reminded the jury that the indictment was not evidence of guilt (DE:203:157; DE:206:96-97).

On August 11, 2022, the jury convicted Brown of all three child sex trafficking counts (DE:168). The district court sentenced Brown to 360 months of imprisonment (DE:196).

This timely appeal followed (DE:198).

## 2. Statement of the Facts

From November 2018 until May 2019, Brown attempted to sell and sold teenage girls for sex, targeting at least five girls as potential child prostitutes and maintaining and transporting at least one of them while she engaged in commercial sex.

First, Brown targeted Minor Victim 1. In Fall 2018, Minor Victim 1 was 14 years old and homeless (DE:203:178-79, 248; Gov't Ex. 21A). For a few months, Minor Victim 1 lived with her 15-year-old friend Child Witness, but in November 2018, Minor Victim 1 ran away (DE:203: 175, 178-82, 244, 248-50; Gov't Ex. 10). By November 20, 2018, Minor Victim 1 ended up in a motel room at the Ramada Inn in Hollywood, Florida, with Brown and Heidy Archer (DE:203:198-99, 201). On November 20, 2018, Minor Victim 1 took multiple photographs of herself, including one with Brown, in that motel room (Gov't Ex. 1). On November 22, 2018, Minor Victim 1 took another photograph of herself in that same motel room (DE:203:205-06; Gov't Ex. 1). And, on November 23, 2018, Minor Victim 1 called Child Witness and invited her to a party at the Ramada Inn (DE:203:181-82, 189). When Child Witness arrived at the Ramada Inn, she found Minor Victim 1 in a room with Brown and Archer next to a table full of pills and needles (DE:203:189, 216). Brown told Child Witness that Minor Victim 1 was working for him as a prostitute, and someone showed Child Witness an online prostitution advertisement for Minor

Victim 1, which included explicit photographs of Minor Victim 1 taken in that motel room (DE:203:189-90, 203, 206, 216). Records from the Ramada Inn showed that Brown rented two rooms there from November 22 to November 24, 2018 (DE:205:25-29; Gov't Ex. 22B).

Next, Brown targeted Child Witness and her two minor friends. On November 23, 2018, after receiving Minor Victim 1's invitation, Child Witness brought two minor friends with her to the Ramada Inn (DE:203:181-82, 196, 210, 215, 247; DE:205:23; Gov't Ex. 12). When Child Witness and her minor friends arrived at the motel and found Minor Victim 1 with Brown and Archer, Brown asked them how they felt about "making money," and Brown told them that Minor Victim 1 was "making money" with him (DE:203:182-83, 189-90, 216). Brown then instructed the three girls to take photographs so that he could make prostitution advertisements for them, further telling them they could then have sex for money with the men who responded to their advertisements (DE:203:189-90). Brown told Child Witness and her minor friends that his "girls" would "show [them] what to do" (DE:203:190).

One of the minor friends, however, responded, "I'm only 16, and I'm not doing this" (DE:203:190). Child Witness also told Brown and Archer that they were minors, they were not doing this, and Minor Victim 1 was younger than they were (DE:203:190, 196-97). Brown told the girls that "the age didn't matter because we were just making money" (DE:203:197, 216). But Child Witness continued to refuse

to take photographs (DE:203:191, 215). An adult then took Minor Victim 1 out of the motel room (DE:203:191, 215). Child Witness and her minor friends tried to find Minor Victim 1, but they could not (DE:203:192, 215-16). Because the girls feared Brown, they fled the Ramada Inn without Minor Victim 1 (DE:203:192, 221).

The next morning, the girls told Child Witness' mother about what happened at the Ramada Inn, and they asked Child Witness' mother to help them rescue Minor Victim 1 (DE:203:212). Child Witness' mother agreed to help, but she insisted that Child Witness call the police, tell the police about Minor Victim 1, and ask the police to come the Ramada Inn (DE:203:213, 250). Child Witness did (DE:203:213, 250). When Child Witness, her two minor friends, and her mother arrived at the Ramada Inn, Child Witness called Minor Victim 1 and asked her to come outside (DE:203:213, 251). When Minor Victim 1 came outside, the girls helped her walk away from the Ramada Inn while Child Witness signaled to the approaching police car (DE:203:213). When Hollywood Police Officer Michael Ryder stopped, he confirmed that Child Witness was the one who called 911 to report child prostitution (DE:203:214, 234-35). Child Witness told Officer Ryder that Minor Victim 1 was being prostituted and was so high on drugs that she did not realize what was happening to her (DE:203:213, 234-35). One of the girls showed Officer Ryder the online prostitution advertisement for Minor Victim 1 (DE:203:237-38).

While Officer Ryder was with Minor Victim 1, Brown exited the Ramada Inn and then ran back inside when he saw Minor Victim 1 with the police (DE:203:214). Officer Ryder requested assistance from the Hollywood Police Department, asking them to investigate Brown, but no one immediately responded (DE:203:242). Officer Ryder then contacted Minor Victim 1's family, who came to the Ramada Inn and took her home (DE:203:236-37, 251-52).

About two months later, on January 30, 2019, the Hollywood Police Department alerted the Federal Bureau of Investigation ("FBI") of the report that Brown had prostituted Minor Victim 1 (DE:204:178-79). The FBI immediately began investigating, meeting with Minor Victim 1 the next day (DE:204:181). Minor Victim 1 gave the FBI consent to search her phone, and FBI agents found photographs confirming that Brown and Minor Victim 1 were together at the Ramada Inn in November 2018 (DE:204:181-82).

Despite that brush with law enforcement, Brown did not stop. Instead, in mid-January 2019, he targeted Minor Victim 2, a homeless 15-year-old girl (DE:204:5, 9; Gov't Ex. 40A). One of Minor Victim 2's school classmates connected her with Brown on Instagram, telling her that Brown could find her a place to live (DE:204:12-18; Gov't Exs. 43B, 86). Over Instagram direct messages, Brown told Minor Victim 2 that he knew her classmate and wanted to help her, he could book hotel rooms for $20 a night, and she could stay with him and go to school

(DE:204:17-18; Gov't Ex. 86). Soon after, Brown picked Minor Victim 2 up from her friend's house and took her to a Motel 6 in Fort Lauderdale, Florida, knowing that she was only 16 years old (DE:204:26-30, 33-34). When Minor Victim 2 arrived at the Motel 6, Archer and another woman named Kayla were inside the room (DE:204:26-27). And, after Brown brought Minor Victim 2 to the Motel 6, he took her phone, refused to bring her to school, and made sure she was always with either himself or Archer (DE:204:34-35, 56-59, 67, 89). For several weeks, Minor Victim 2 stayed in the motel room with Brown, Archer, and Kayla (DE:204:10-11, 28-29, 34). Although Brown paid for Minor Victim 2's share of the motel room and food, he warned her that "not everything in life is for free" (DE:204:30).

At the beginning of February, Brown drove Minor Victim 2, Archer, and Kayla to Orlando (DE:204:35-36). Once they arrived, Brown told Minor Victim 2 that she had to start prostituting (DE:204:36-38). Brown instructed Minor Victim 2 to take pictures of herself for a prostitution advertisement, and he told her that she would have sex for money with the men who responded to her advertisement (DE:204:38-40). Minor Victim 2 asked Brown and Archer if she had to have sex with the men; they told her that she could take the money and run, but they warned her that would be dangerous (DE:204:40). Then, at Brown's direction, Archer took nude photographs of Minor Victim 2 and Minor Victim 2 sent Archer photographs that she took of herself (DE:204:40-41, 88, 92, 107; Gov't Exs. 46D, 49, 87). Archer

then sent the photographs to Brown, and he used them to create a prostitution advertisement for Minor Victim 2 that he posted to multiple websites (DE:204:41, 48; Gov't Exs. 49A-49F, 80V, 87). Later that day, Brown told Minor Victim 2 that a man was coming for her and that she needed to collect the fee that he already negotiated before having sex with that man (DE:204:48-50). Minor Victim 2 followed Brown's instructions, giving Brown most of the money afterward (DE:204:48-50). While in Orlando, Brown repeated that pattern, sending Minor Victim 2 on prostitution dates that he arranged with men who responded to her advertisement, transporting her to those dates, and taking over half of the money that she was paid (DE:204:50-53, 63).

After a few days in Orlando, Brown drove Minor Victim 2, Archer, and Kayla back to Fort Lauderdale (DE:204:53). Along the drive, Brown made stops for Minor Victim 2 to have prostitution dates that he arranged (DE:204:54). Once back in Fort Lauderdale, Brown rented a room at a Motel 6 from February 2 through February 5, 2019 (DE:205:62-63). At this point, Minor Victim 2 reminded Archer and Brown that she was only 16 years old (DE:204:55). But Brown continued to post prostitution advertisements for her, which listed his telephone number as the contact, and to send her on prostitution dates (DE:204:98-99; DE:205:43-52, 63-64, 66-78, 87; Gov't Exs. 49A-49H). On February 5, 2019, Brown and Archer exchanged text messages about Minor Victim 2 (Gov't Ex. 47E-1). After Archer accused Brown of

having sex with Minor Victim 2, writing "nobody said to try and fuck a 15 yr old," Brown responded, "I never tried or I could she been wit me for 2 weeks" (Gov't Ex. 47E-1:1245-46). Archer cautioned Brown to treat Minor Victim 2 better because she was young and made him money, and Archer reported to Brown that Minor Victim 2 now had a phone (Gov't Ex. 47E-1:1249-50).

A few days later, Brown and Archer left Minor Victim 2 alone in the motel room (DE:204:56-57). She used that rare moment alone to call a friend (DE:204:56-57, 89). That friend then came to the motel and drove Minor Victim 2 away, freeing her from Brown and Archer (DE:204:56-57, 89).

On May 23, 2019, the FBI found an opportunity to apprehend Brown (DE:204:181). After law enforcement saw a prostitution advertisement for Archer, an undercover officer arranged to meet Archer for a prostitution date in hopes that Brown would be with her (DE:204:181, 185-87). At the appointed time, Brown drove up to the La Quinta Inn in Hollywood, Florida—where Archer had rented a room from May 18 through May 24, 2019—with Archer in the passenger seat and 17-year-old Minor Victim 3 in the backseat of his car (DE:204:187-89, 193-94; DE:205:120; Gov't Ex. 61). Brown's iPhone, Archer's iPhone, and one of Minor Victim 3's phones had all been connected to the wireless network at that La Quinta Inn on May 22 and May 23, 2019 (DE:205:7, 111-12). And, on those days, Minor Victim 3 posted an online prostitution advertisement for herself multiple times

(DE:204:189, 191-92; DE:205:116-17; Gov't Exs. 70A-70E). When law enforcement recovered Minor Victim 3 from Brown's car, the only things she had on her person were a purse containing condoms and two phones (DE:204:189, 191-92; DE:205:116-17). After his arrest, Brown continued to communicate with Archer (DE:204:66-67). And, at Brown's behest, Archer called Minor Victim 2 and told her not to testify against Brown (DE:204:66-67).

**3. Standards of Review**

This Court reviews challenges to the sufficiency of the evidence de novo. *United States v. Watts*, 896 F.3d 1245, 1250-51 (11th Cir. 2018).

This Court reviews evidentiary rulings for an abuse of discretion. *United States v. Jeri*, 869 F.3d 1247, 1265 (11th Cir. 2017). This Court reviews a Confrontation Clause claim raised for the first time on appeal for plain error. *United States v. Arbolaez*, 450 F.3d 1283, 1291 & n.8 (11th Cir. 2006). And, even if a district court abuses its discretion or plainly errs, this Court will not reverse an erroneous evidentiary ruling if that error was harmless. *United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011).

This Court "review[s] the district court's determination whether to strike an entire jury panel for manifest abuse of discretion." *United States v. Trujillo*, 146 F.3d 838, 842 (11th Cir. 1998).

And this Court reviews "a claim under the Speedy Trial Act de novo and review[s] a district court's factual determinations on excludable time for clear error." *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002).

**Summary of the Argument**

This Court should affirm Brown's three child sex trafficking convictions. First, sufficient evidence supports Brown's convictions for conspiring to sex traffic a minor and for attempting to sex traffic Minor Victim 1. Minor Victim 2 testified Archer and Brown created prostitution advertisements for her, kept her sequestered in motel rooms, and arranged prostitution dates for her; Child Witness testified that Brown told her that he prostituted Minor Victim 1; Child Witness and Officer Ryder testified that they saw a prostitution advertisement for Minor Victim 1; an FBI agent testified that he recovered Minor Victim 3 from a car with Brown and Archer in a motel parking lot on a day when prostitution advertisements for her were posted online; and all that testimony was corroborated by photographs, phone records, and motel receipts. Second, the district court properly admitted excerpts from Archer's iPhone records. Contrary to Brown's vague arguments on appeal, none of that limited evidence was prior bad acts evidence, testimonial hearsay, or unduly prejudicial evidence. Third, the district court did not manifestly abuse its discretion in declining to strike the venire, because Brown did not show any juror was biased after learning there was a prior version of the conspiracy charge. And, finally, the

district court did not err in denying Brown's *pro se* motions to dismiss his indictment under the Speedy Trial Act, because Brown improperly filed those motions while represented by counsel and because less than 70 non-excluded days passed between Brown's arraignment and his final motion to dismiss.

## Argument

### I. Brown's Convictions for Conspiring to Sex Traffic a Minor and for Attempting to Sex Traffic Minor Victim 1 Were Supported by Sufficient Evidence.

Brown's convictions are based on 18 U.S.C. § 1591(a), which criminalizes child sex trafficking. Under that statute, a defendant sex traffics a child if he "knowingly . . . recruits, entices, harbors, transports, provides, obtains, [or] maintains by any means a person . . . knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 15911(a). Under 18 U.S.C. § 1594(a), attempting to violate and conspiring to violate 18 U.S.C. § 1591(a) are crimes.

In reviewing the sufficiency of the evidence, this Court must view "all the evidence in the light most favorable to the government, resolving any conflicts in favor of the government's case." *Watts*, 896 F.3d at 1250-51. Thus, this Court cannot overturn the jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013). And this Court

assumes that the jury made all credibility findings in favor of the verdict, *United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009), meaning it will not disturb a verdict unless the defendant shows that the witness' testimony was incredible as a matter of law, *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997).

The evidence—particularly the victim and law enforcement testimony that this Court must credit on appeal—showed that Brown both conspired with Archer to sex traffic a minor and attempted to sex traffic Minor Victim 1.

### A. Brown Conspired with Archer to Sex Traffic a Minor.

Brown does not challenge his conviction for sex trafficking Minor Victim 2. But he argues that he cannot be convicted of conspiring to sex traffic Minor Victim 2, or any other minor, because the government did not sufficiently prove that he and Archer had an agreement (Br.:6-7, 19-20). But it did.

To sustain a conviction for conspiracy to engage in child sex trafficking, the government must prove that (1) two or more persons agreed to violate § 1591; (2) the defendant knew about the conspiratorial goal; and (3) the defendant helped voluntarily to accomplish that goal. *United States v. Mozie*, 752 F.3d 1271, 1287 (11th Cir. 2014); *see also United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). That agreement "may by proven by circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme," with "no distinction between circumstantial and direct

evidence." *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005). In addition, "[p]roof is not required that the defendant had knowledge of all the details of the conspiracy; the defendant need only have knowledge of the essential objective of the conspiracy." *United States v. Elledge*, 723 F.2d 864, 866 (11th Cir. 1984).

Taking the victim and law enforcement testimony in the light most favorable to the verdict, as this Court must, ample circumstantial evidence showed that Brown and Archer agreed to sex traffic a minor.

First, Child Witness testified that Brown and Archer recruited her and three of her friends to be child prostitutes (DE:203:175, 232-33). Child Witness explained that, when she was 15 years old, her 14-year-old friend Minor Victim 1 invited her to a party at the Ramada Inn (DE:203:175, 181). But, Child Witness testified, when she arrived at the Ramada Inn, there was no party (DE:203:182, 196). Instead, Child Witness explained, she and two minor friends found Minor Victim 1 in a room with Brown, Archer, and a table filled with pills and needles (DE:203:182-83, 185). And, Child Witness testified, once the girls were inside the room, Brown asked them, in front of Archer, "how do you feel about making money?", told them that Minor Victim 1 was working for him as a prostitute, and told them they could also be prostitutes (DE:203:189-90, 216). Child Witness said that Brown instructed her and her minor friends to take pictures for prostitution advertisements and that his "girls" would show them what to do (DE:203:190). Child Witness testified that she and one

of her minor friends told Brown and Archer repeatedly that they, and Minor Victim 1, were children, but that Brown told them that their age was unimportant and continued to pressure them to make prostitution advertisements until they fled (DE:203:190-91, 196-97, 215-16).

Second, Minor Victim 2 testified that Brown and Archer maintained her as a child prostitute in January and February 2019 (DE:204:9). She explained that, after a classmate connected her with Brown on Instagram, Brown offered to provide her with housing so that she could attend school; a record of Brown's Instagram direct corroborated that testimony (DE:204:9, 12-13, 17-19; Gov't Ex. 86). But, Minor Victim 2 testified, after Brown brought her to a Motel 6, he put her in a room with Archer and another woman named Kayla, he took her phone, he never brought her to school, and he and Archer kept her under constant supervision for weeks (DE:204:19-20, 25-29, 34-35, 58-59, 89).

Minor Victim 2 further testified that, a few weeks later, Brown and Archer brought her to Orlando (DE:204:35-36). Minor Victim 2 explained that, once she was in Orlando, Brown told her that she had to start prostituting (DE:204:36-38). She said that, when she asked Brown and Archer if she had to have sex with the men, they told her that she could take the money and run but warned that would be dangerous (DE:204:40). Minor Victim 2 testified that Archer took and collected photographs of her for a prostitution advertisement, giving them to Brown to post

online; Minor Victim 2's phone records corroborated that testimony (DE:204:38-42, 48, 67, 88, 92, 107; Gov't Ex. 46D). Minor Victim 2 said that, for about the next month, Brown and Archer stayed with her in motel rooms while Brown sent her to have commercial sex with the men who responded to her prostitution advertisement (DE:204:48, 50, 51, 53-55; Gov't Ex. 49A-49H). And Minor Victim 2 testified that, after her escape, Archer contacted her, telling her that Brown did not want her to testify against him (DE:204:67-68).

Third, an FBI agent testified that he found Archer and Brown with a 17-year-old who was engaging in commercial sex during an undercover sting operation (DE:204:178, 181, 184-85). That agent said that, on May 23, 2019, Brown and Archer arrived at a La Quinta Inn with Minor Victim 3, who was carrying only a purse filled with condoms and two phones (DE:204:188-89, 191-93; DE:205:8, 13). The La Quinta Inn records show that Archer rented a motel room there from May 18 through May 24, 2019 (DE:205:119-20; Gov't Ex. 61). And, on May 22 and 23, 2019, Minor Victim 3 posted prostitution advertisements of herself on multiple websites using photographs that were taken at the La Quinta Inn during a time when her, Brown's, and Archer's phones were connected to the wireless network there (DE:205:103-04, 111-138; DE:206:7, 12-13; Gov't Exs. 47O, 47P, 69, 70D, 70E).

That circumstantial evidence of Brown's and Archer's joint interactions with Child Witness, Minor Victim 2, and Minor Victim 3 showed that Brown and Archer

agreed to persuade or maintain at least one minor to engage in commercial sex. Accordingly, this Court should affirm Brown's conspiracy conviction.

### B. Brown Attempted to Sex Traffic Minor Victim 1.

To convict Brown of attempting to sex traffic Minor Victim 1, "the government need only prove that (1) [he] act[ed] with the kind of culpability otherwise required for the commission of the crime for which he is charged with attempting; and (2) [he] engaged in conduct that constitutes a substantial step toward the commission of the crime." *United States v. Root*, 296 F.3d 1222, 1227-28 (11th Cir. 2002). While Brown argues that he must be acquitted because Minor Victim 1 did not testify against him (Br.:5, 7), that is not the law. Instead, the evidence is sufficient if the jury found that the witnesses who testified that Brown attempted to sex traffic Minor Victim 1 were credible or if circumstantial evidence showed Brown attempted to sex traffic Minor Victim 1. *See Jiminez*, 564 F.3d at 1285. Both were present here.

First, Child Witness testified that Brown attempted to sex traffic Minor Victim 1. Child Witness told the jury that, when she was 15 years old, her 14-year-old friend Minor Victim 1 invited her to a party at the Ramada Inn (DE:203:175, 181). But, Child Witness testified, when she arrived at the Ramada Inn there was no party; instead, she found Minor Victim 1 in a room with Brown, other adults, and a table filled with pills and needles (DE:203:182-83, 185). Child Witness said that, once she

was inside that room, Brown told her that Minor Victim 1 made money for him as a prostitute and someone showed her a prostitution advertisement for Minor Victim 1 that included explicit pictures of Minor Victim 1 that were taken in that motel room (DE:203:189-90, 203-04, 216, 221). Child Witness then testified that, the next day, after calling the police for assistance, she returned to the Ramada Inn to rescue Minor Victim 1 from Brown (DE:203:212-13). Child Witness said that, once she got Minor Victim 1 outside the Ramada Inn and walked her to the waiting police officer, she saw Brown emerge from the Ramada Inn and then immediately go back inside when he saw Minor Victim 1 with the police (DE:203:213-14).

Second, Officer Ryder corroborated Child Witness' testimony (DE:203:234). He testified that he responded to a call about child prostitution at the Ramada Inn (DE:203:234-35). Officer Ryder said that, as he was driving into the Ramada Inn, Child Witness signaled to him (DE:203:235-36). He explained that, when he stopped, Child Witness told him that she had called the police, and he confirmed that the girl with her was Minor Victim 1 and that Minor Victim 1 was 14 years old (DE:203:236-37). Officer Ryder testified that one of the girls showed him an online prostitution advertisement for Minor Victim 1 (DE:203:237-38). Officer Ryder also said that he saw Brown when he rescued Minor Victim 1 (DE:203:240-41).

Third, Child Witness' mother's testimony corroborated Child Witness' and Officer Ryder's testimony. Child Witness' mother testified that Child Witness told

her that Minor Victim 1 needed to be rescued from the Ramada Inn, and that, in response, she instructed Child Witness to call the police (DE:203:250). Child Witness' mother also testified that, once they were at the Ramada Inn, Minor Victim 1 came outside, and Child Witness brought Minor Victim 1 to the waiting police officer (DE:203:251-52).

And, fourth, circumstantial evidence showed that Brown had Minor Victim 1 sequestered in a motel room while he prepared her to engage in commercial sex. On November 20 and November 22, 2018, Minor Victim 1 took multiple photographs of herself in the Ramada Inn room, including one of herself with Brown (DE:203:199-202, 205-06; DE:204:179; Gov't Ex. 1). The photographs in Minor Victim 1's prostitution advertisement were also taken in that room (DE:203:189-90, 203, 206, 216, 237-38). And the Ramada Inn records showed that Brown rented two rooms there from November 22 to 24, 2018 (DE:205:25-29; Gov't Ex. 22B).

All of that, taken in the light most favorable to the verdict, showed that Brown intended to recruit and maintain Minor Victim 1 to engage in commercial sex and took a substantial step toward doing just that. Accordingly, this Court should affirm Brown's attempted child sex trafficking conviction.

## II. The District Court Did Not Reversibly Err in Admitting Excerpts from Archer's iPhone Records.

Brown vaguely argues that the district court reversibly erred in admitting Government Exhibits 47A through 47P (even though the district court did not admit all those exhibits), violating Federal Rules of Evidence 403, 404(b), and 802 and the Sixth Amendment (Br.:12).[2] That argument is contradicted by the record and the law. Indeed, the excerpts from Archer's iPhone records that were admitted into evidence did not involve extrinsic evidence of prior bad acts, were not testimonial hearsay, and were not unduly prejudicial. Further, even if there were any error, it would be harmless considering the ample testimony against Brown.

---

[2] This Court has been clear that "[a]n appellant must adequately brief each issue by plainly and prominently raising it." *United States v. Cooper*, 926 F.3d 718, 730 (11th Cir. 2019). Accordingly, this Court will not address arguments raised only in perfunctory manner and without any citations to legal authority or the record. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *see also United States v. Campbell*, 26 F.4th 860, 871-72 (11th Cir. 2022) (holding issues not prominently raised are forfeited and generally considered abandoned).

Brown only made perfunctory evidentiary arguments without any clear citations, thus abandoning those arguments. Indeed, Brown does not specify which of the admitted sub-exhibits he is challenging or why he believes those sub-exhibits contain extrinsic evidence of prior bad acts or hearsay. But, in an abundance of caution, the government will respond to what it believes are the evidentiary arguments Brown would have made.

### A. Only Government Exhibits 47A, 47C, 47D, 47E-1, 47F, 47G, 47H, 47J, 47L, 47M, 47N, 47O, and 47P Were Admitted into Evidence.

Contrary to Brown's belief, the district court did not admit Exhibits 47A though 47P into evidence.

At the start of trial, the Government sought a preliminary ruling that Archer's iPhone records, which were contained in Government Exhibit 47, could be received into evidence to avoid recalling the authenticating witness (DE:204:116-25). *See United States v. Wenxia Man*, 891 F.3d 1253, 1271 (11th Cir. 2018) (explaining district court has discretion to preemptively admit hearsay statements "subject to later proof" that the statement is made by the defendant's coconspirator in furtherance of the conspiracy). At that time, Brown generally objected to the admission of Archer's iPhone records, contending some of them, particularly the text messages sent between Brown and Archer, were irrelevant or unduly prejudicial (DE:204:117-25). The district court explained that it would rule individually on whether each sub-exhibit within Government Exhibit 47 was admissible at the time that the government sought to admit it into evidence (DE:204:125).

At the end of trial, Brown specifically objected to Government Exhibits 47B, 47C, 47D, 47E, 47E-1, and 47F through 47N, generally citing Rules 403, 404(b), and 802 (DE:205:89). Brown elaborated that government Exhibit 47E was objectionable because it contained 92 pages of text messages between Brown and

Archer (DE:205:91). But the government explained that it was not seeking to admit that exhibit (DE:205:91-92). Instead, the government stated that it was only going to admit Government Exhibit 47E-1, a 13-page excerpt from the text messages between Brown and Archer during which they discussed Minor Victim 2 being a child and a prostitute (DE:205:91-92).

After that discussion, the district court admitted only Government Exhibits 47A, 47C, 47D, 47E-1, 47F, 47G, 47H, 47J, 47L, 47M, 47N, 47O, and 47P into evidence (DE:205:89, 105; DE:206:90-92). The district court explained that it was admitting the text messages between Brown and Archer within the conspiracy period under the co-conspirator exception to hearsay (DE:205:90). The district court also found that the text messages were intrinsic evidence of Brown's crimes, meaning that Rule 404(b) was inapplicable (DE:205:92).

### B. The District Court Did Not Abuse Its Discretion in Admitting Excerpts from Archer's iPhone Records Under Rules 403, 404(b), or 802.

Under Rule 404(b), extrinsic evidence of any prior crime, wrong, or bad act cannot be admitted to prove a defendant's character to show conformity with it. Fed. R. Evid. 404(b)(1). But Rule 404(b) does not prohibit the admission of intrinsic prior bad acts evidence, which is evidence that "arose out of the same transaction or series of transactions as the charged offense," is "necessary to complete the story of the

crime," or is "inextricably intertwined with the evidence regarding the charged offense." *United States v. Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995).

Under Rule 802, hearsay is generally inadmissible. Fed. R. Evid. 802. Hearsay is narrowly defined as an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Thus, statements offered as a basis to infer something other than the matter asserted—such as the effect on the listener—or statements that cannot be proven true or false are not hearsay. *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015). And Rule 801 provides multiple exceptions to the hearsay prohibition.

For example, a defendant's own statements or any statements that he adopts are not hearsay. Fed. R. Evid. 801(d)(2)(A); *United States v. Munoz*, 16 F.3d 1116, 1120 (11th Cir. 1994) ("A statement is not hearsay if it is the statement of the party against whom it is offered."). A defendant adopts a statement when "an innocent defendant would normally be induced to respond" and when "there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement." *United States v. Jenkins*, 779 F.2d 606, 612 (11th Cir. 1986). And statements "made by the [defendant's] coconspirator during and in furtherance of the conspiracy" are not hearsay. Fed. R. Evid. 801(d)(2)(E). For a statement to fall under the coconspirator hearsay exception, the government must prove by a preponderance of the evidence that: (1) a conspiracy

existed; (2) the conspiracy included the declarant and the defendant; and (3) the declarant made the statement during and in furtherance of the conspiracy. *United States v. Christopher*, 923 F.2d 1545, 1549-50 (11th Cir. 1991). "This [C]ourt applies a liberal standard in determining whether a statement is made in furtherance of a conspiracy. The statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way." *United States v. Flores*, 572 F.3d 1254, 1264 (11th Cir. 2009).

Under Rule 403, the district court may exclude otherwise admissible evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice." Fed. R. Evid. 403. But Rule 403 exclusion is "an extraordinary remedy that must be used sparingly." *United States v. U.S. Infrastructure, Inc.*, 576 F.3d 1195, 1211 (11th Cir. 2009). Thus, in considering admissibility under Rule 403, this Court views "the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003).

None of the admitted records from Archer's iPhone violate any of those Rules, thus the district court did not abuse its discretion in admitting them.

**1. Government Exhibit 47A**

Government Exhibit 47A is an extraction report from Archer's iPhone, which states the phone numbers and email addresses registered to that iPhone (Gov't Ex.

47A). That record contains no extrinsic evidence of a prior bad act, so Rule 404(b) does not apply. And the extraction report was not hearsay, because it falls under the exception for records regularly kept in the usual course of business. *See* Fed. R. Evid. 803(6); *United States v. Sanchez*, 586 F.3d 918, 929-30 (11th Cir. 2009) (holding cell phone records are business records under Rule 803(6) and thus not hearsay). And, finally, this exhibit merely informed the jury that Archer had an iPhone and that Archer used a particular phone number and email address with that iPhone. None of that basic biographical data is prejudicial, let alone so prejudicial as to meet the high standard of Rule 403.

**2. Government Exhibit 47C**

Government Exhibit 47C is an audio message that Brown sent to Archer about Minor Victim 2. In that message, Brown said, "[y]ou know how many bitches out here of age and older than me with more money than me want to fuck . . . . The only reason that bitch is fucking is 'cause it's money. The bitch is fucking for money" (DE:204:151; Gov't Ex. 47C). That recording did not mention a prior bad act and was intrinsic evidence that was inextricably intertwined with Brown's sex trafficking of JM, so Rule 404(b) does not apply. And, because the audio message was Brown's own prior statement, it was not hearsay. *See* Fed. R. Evid 801(d)(2)(A) (providing defendant's own out-of-court statements are not hearsay). Further, that audio message was not unduly prejudicial under Rule 403, because Minor Victim 2 had

already testified that she was a minor, she was a prostitute, and Brown maintained and transported her while she was a child prostitute. *See United States v. Harris*, 886 F.3d 1120, 1129 (11th Cir. 2018) (holding Rule 403 was not violated when district court admitted crime scene photographs of a murder when testimony described the murder scene).

**3. Government Exhibit 47D**

Government Exhibit 47D is a record of the text messages exchanged between Archer's iPhone and Minor Victim 2's iPhone from February 5 through February 16, 2019, showing that Minor Victim 2 sent Archer photographs of herself (DE:204:139-42). Because those messages do not involve a prior bad act and they were intrinsic evidence that was inextricably intertwined with Brown's sex trafficking of JM, Rule 404(b) does not apply. And, because those messages were business records that were not offered for the truth of the matter asserted—their purpose was only to corroborate Minor Victim 2's testimony that she texted photographs of herself to Archer—they were not hearsay. *See* Fed. R. Evid. 801(c); Fed. R. Evid. 803(6); *Sanchez*, 586 F.3d at 929-30. Further, even if Archer's text messages had been offered for their truth, they would be admissible under Rule 801(d)(2)(E)'s co-conspirator exception, because Archer's texts to Minor Victim 2 were statements "made by [Brown's] coconspirator during and in furtherance of the conspiracy." *See* Fed. R. Evid. 801(2)(E). As explained above in Section IA, Brown

and Archer conspired to sex traffic Minor Victim 2 and the transmission of photographs for her prostitution advertisements were statements furthering the interests of that conspiracy. *See Flores*, 572 F.3d at 1264. And, finally, because the exhibit is corroborative of Minor Victim 2's testimony that she sent photographs of herself to Archer for her prostitution advertisements and because the exhibit showed the same photographs that appeared in the exhibits of Minor Victim 2's prostitution advertisements, the exhibit was not unduly prejudicial under Rule 403.

**4. Government Exhibit 47E-1**

Government Exhibit 47E-1 is 13 pages of text messages sent between Brown's iPhone and Archer's iPhone from February 5 to February 8, 2019, about Minor Victim 2 (Gov't Ex. 47E-1). In that exchange, Archer accused Brown of wanting to have sex with Minor Victim 2, writing, "nobody said to try and fuck a 15yr old" (DE:47E-1:1246). Brown responded, "I never tried or I could she been wit me for 2 weeks" (*id.*). Archer also sent Brown texts reporting that Minor Victim 2 now had a phone and admonishing him to treat Minor Victim 2 better because she was young and made him money (DE:47E-1:1249-50).

Because these text messages were intrinsic to Brown's crime of sex trafficking Minor Victim 2 and no prior bad acts were mentioned in those text messages, Rule 404(b) does not apply. And, because none of Archer's text messages, which were records kept in the ordinary course by the telephone service provider, were offered

for the truth of the matter asserted, they were not hearsay. *See* Fed. R. Evid. 801(c)(2); Fed. R. Evid. 803(6); *Sanchez*, 586 F.3d at 929-30. Instead, Archer's text messages were offered for the effect they had on Brown and to give context to Brown's responses about Minor Victim 2 in which he admitted that he knew that she was a child engaging in commercial sex and that he had been maintaining her for two weeks. *See United States v. Cruz*, 805 F.2d 1464, 1478 (11th Cir. 1986) (rejecting arguments that statements by third party on tape recorded conversation should be excluded as hearsay and noting that "the jury needed to hear them to give context to [d]efendant's responses"). In addition, even if Archer's text messages had been offered for their truth, they would not be hearsay because they were statements "made by [Brown's] coconspirator during and in furtherance of the conspiracy." *See* Fed. R. Evid. 801(2)(E). As explained above in Section IA, Brown and Archer conspired to sex traffic Minor Victim 2, and those text messages furthered the interests of that conspiracy when Archer advised Brown on how to treat Minor Victim 2 and reported to him that Minor Victim 2 had a phone. *See Flores*, 572 F.3d at 1264 ("The statement need not be necessary to the conspiracy, but must only further the interests of the conspiracy in some way."). In addition, Archer's statement "nobody said to try and fuck a 15yr old" (DE:47E-1 at 1245) cannot be hearsay, because Brown adopted the statement when he did not respond to it despite responding to other parts of the same text message. Fed. R. Evid. 801(d); *Jenkins*,

779 F.2d at 612. And, finally, the text messages were not unduly prejudicial under Rule 403. Because of Minor Victim 2's testimony, the jury already knew that she was 15 years old, she had been with Brown for weeks, and she was working as a child prostitute for him. *See Harris*, 886 F.3d at 1129.

**5. Government Exhibits 47F, 47G, and 47H**

These three exhibits were telephone call logs found on Archer's iPhone (DE:204:152, 154). Because they do not involve a prior bad act, Rule 404(b) does not apply. And, because the call logs were regularly kept records of regularly conducted activity by the telephone service provider, they were not hearsay. *See* Fed. R. Evid. 803(6); *Sanchez*, 586 F.3d at 929-30 (holding cell phone call logs are business records under Fed. R. Evid. 803(6) and not hearsay). Finally, these business records, which were neither cumulative nor inflammatory, were not unduly prejudicial under Rule 403.

**6. Government Exhibit 47J**

Government Exhibit 47J contains text messages sent between Archer's iPhone and Brown's iPhone during February 2019 that showed they were in Fort Lauderdale and sharing transportation arrangements during the time that Minor Victim 2 testified they were trafficking her in Fort Lauderdale (Gov't Ex. 47J). Because those text messages were intrinsic evidence of the conspiracy and did not involve prior bad acts, Rule 404(b) does not apply. And the text messages were not hearsay,

because they were statements by Brown; statements by Archer offered, not for their truth, but only to give context to Brown's responses; or statements made in furtherance of the conspiracy as Brown and Archer were making transportation arrangements during the time that they were jointly maintaining Minor Victim 2 as a child prostitute. *See* Fed. R. Evid. 801(c), (d)(2)(A), (d)(2)(E). And nothing in those text messages was unduly prejudicial under Rule 403, particularly when compared with Child Witness' and Minor Victim 2's testimony that Brown prostituted and provided drugs to homeless children.

**7. Government Exhibits 47L through 47P**

Government Exhibits 47L through 47P are photographs found on Archer's iPhone along with location information showing that they were taken at the La Quinta Inn in Hollywood, Florida, on May 21, 2019, which was where and when law enforcement found Brown and Archer with Minor Victim 3 (DE:204:134, 156-57, 159-62). Because none of the photographs depict prior bad acts and they were intrinsic evidence that was inextricably intertwined with Brown's conspiracy to sex traffic children, Rule 404(b) does not apply. And, because the photographs and associated location data were business records that were not themselves assertions being offered for their truth, they were not hearsay. *See Sanchez*, 586 F.3d at 929-30 (holding location data is a business record under Fed. R. Evid. 803(6) and not hearsay). Finally, those photographs and their location data were not unduly

prejudicial under Rule 403, because they merely showed when Brown and Archer were at that La Quinta Inn.

Accordingly, the district court did not abuse its considerable discretion under the Federal Rules of Evidence in admitting excerpts from Archer's iPhone records into evidence.

### C. The District Court Did Not Plainly Err in Failing to Spontaneously Find Archer's iPhone Records Violated Brown's Confrontation Clause Rights.

Because Brown did not object at trial to the admission of any evidence based on the Confrontation Clause, this Court reviews his Sixth Amendment claim only for plain error. *Jiminez*, 564 F.3d at 1286. Thus, Brown has the burden of establishing that there was an error, that the error was plain or obvious under binding law, that the error affected his substantial rights, and that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* Brown did not carry that burden.

Under the Sixth Amendment's Confrontation Clause, "the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, the Supreme Court explained that the Confrontation Clause prohibits the admission of testimonial hearsay unless certain criteria are met. 541 U.S. 36, 51-52 (2004). Thus, if a statement is either not testimonial or not

hearsay, the Confrontation Clause does not bar its admission. *Id.*; *Jiminez*, 564 F.3d at 1286-87.

As explained above, the hearsay rules contain many exceptions. *See* Fed. R. Evid. 801, 802, 803. And, as also explained above, none of the admitted excerpts from Archer's iPhone records were hearsay. Thus, the admission of that evidence could not violate the Confrontation Clause.

Further, none of that evidence involved a testimonial statement, the other requirement of a Confrontation Clause claim. A testimonial statement is made under circumstances that would lead the declarant to reasonably believe the statement will later be used at trial. *United States v. Underwood*, 446 F.3d 1340, 1347 (11th Cir. 2006). For example, testimonial statements include affidavits, depositions, confessions, trial preparation documents, and statements taken by law enforcement during an investigation. *Crawford*, 541 U.S. at 51-52. Conversely, testimonial statements do not include business records that are routinely recorded for a purpose other than preparation for a criminal trial. *Crawford*, 541 U.S. at 56; *United States v. Caraballo*, 595 F.3d 1214, 1226-29 (11th Cir. 2010). Indeed, this Court has held that phone records and text messages are not testimonial, because they are records routinely kept for non-prosecutorial purposes. *See United States v. Mathis*, 767 F.3d 1264, 1278-79 (11th Cir. 2014) (holding text messages "were not formalized testimonial materials, and they were not made under circumstances that would lead

an objective witness reasonably to believe that they would be available for use at a later trial"); *see also United States v. Carr*, 607 F. App'x 869, 877 (11th Cir. 2015) (finding text messages are not testimonial); *United States v. Green*, 396 F. App'x 573, 575 (11th Cir. 2010) (holding cell phone records and location data are not testimonial).

Accordingly, because no court has ever held that iPhone records are testimonial statements—indeed, this Court has held to the contrary—the district court did not err, let alone plainly err, in failing to find the admitted excerpts from Archer's iPhone records violated the Confrontation Clause.

### D. Any Evidentiary Error Was Harmless.

Even if the district court abused its discretion or plainly erred in admitting any of the excerpts from Archer's iPhone records, that error would be harmless. Evidentiary errors are harmless "if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, or had but very slight effect." *United States v. Magluta*, 418 F.3d 1166, 1180 (11th Cir. 2005). And Confrontation Clause errors are harmless if "it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Caraballo*, 595 F.3d at 1229 n.1. Thus, Brown's alleged errors are harmless and cannot yield the reversal of a conviction, if "sufficient evidence unaffected by error supports the verdict." *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999). It did.

The evidence from Archer's iPhone was not critical to Brown's convictions for conspiring to sex traffic a minor with Archer, attempting to sex traffic Minor Victim 1, or sex trafficking Minor Victim 2. Instead, as explained above in Section I, overwhelming testimonial evidence, including testimony from multiple victims and from law enforcement, supported Brown's convictions. And, further, that testimony was corroborated by photographs, hotel receipts, and records of online prostitution advertisements for the minor victims.

Accordingly, Brown's convictions should be affirmed.

## III. The District Court Did Not Manifestly Abuse Its Discretion When It Declined to Strike the Venire After It Read a Prior Version of the Conspiracy Charge.

Brown argues that the district court manifestly abused its discretion when it declined to strike the venire after it read aloud a prior version of the conspiracy charge that said that Brown conspired to traffic three minor victims, not just a minor as charged in the superseding indictment (Br.:5-6, 10). Brown is wrong.

A defendant has the constitutional right to a venire of impartial potential jurors. *United States v. Tegzes*, 715 F.3d 505, 507 (11th Cir. 1983). But district courts, who are in the best position to observe the venire, have wide discretion to determine whether a venire is impartial. *Id.* at 509. In making that determination, the district court begins with a presumption that all potential jurors are impartial. *Id*. To overcome that presumption of impartiality and have a venire struck, the defendant

must show that the venire has "exhibited actual bias." *United States v. Khoury*, 901 F.2d 948, 955 (11th Cir. 1990); *see also United States v. Joseph*, 806 F. App'x 839, 840 (11th Cir. 2020) ("To demonstrate error in the denial of a motion to strike the panel, the defendant must overcome the presumption of juror impartiality by a showing of actual bias."). To show actual bias, the defendant must set forth evidence of either (1) "an express admission of bias" by the venire or (2) "specific facts showing such a close connection to the circumstances of the case that bias must be presumed" on the part of the venire. *Khoury*, 901 F.2d at 955.

Brown has never made any showing of bias to overcome the presumption of juror impartiality, thus his claim must fail. When he moved to strike the venire before the district court, Brown argued only that a juror might wonder why Minor Victim 3 was mentioned in the original indictment but not the superseding indictment (DE:203:55). And, before this Court, Brown did not even mention the term bias—the legal lynchpin of his claim—in his brief (*see* Br.:9-12). Instead, Brown only speculated that the venire might "wonder what happened to the third minor victim" (Br.:5-6, 11). That is not enough.

In addition, no actual bias could arise from the venire knowing that the Government once alleged that the conspiracy had three minor victims. At first, the district court said that Count 1 charged that Brown

> did knowingly combine, conspire, confederate and agree with other persons known and unknown to the grand jury to recruit, entice, harbor, transport, provide, obtain, advertise, and maintain by any means *persons, that is, Minor Victim Number 1, Minor Victim Number 2, and Minor Victim Number 3*—

(DE:203:19) (emphasis added). After the government stopped the district court, the district court corrected itself and read the superseding conspiracy charge aloud, stating that Brown

> did knowingly combine, conspire, confederate and agree with other persons known and unknown to the grand jury to recruit, entice, harbor, transport, provide, obtain, advertise, and maintain by any means *a person* in . . .

(DE:203:20) (emphasis added). The district court's correction was immediate, and, when the jury deliberated, they were given a copy of the superseding indictment for reference (DE:206:112). Thus, there could be no actual bias.

Not only was the district court's error minor and quickly corrected, it was also of no moment because the jury heard evidence that Brown and Archer conspired to traffic at least five minors, two more than mentioned in the original conspiracy charge. As outlined above in Section IA, Child Witness testified—and that testimony was corroborated by her mother's testimony, Officer Ryder's testimony, photographs, and hotel receipts—that Archer and Brown worked together to recruit her, her two minor friends, and Minor Victim 1 to be child prostitutes. Then Minor Victim 2 testified—and her testimony was corroborated by photographs, phone

records, and motel receipts—that Archer and Brown worked together to recruit and maintain her as a child prostitute for months. And, finally, an FBI agent testified—and his testimony was corroborated by phone records and motel receipts—that he found Minor Victim 3 with Brown and Archer outside a motel room that Archer rented with only two cell phones and condoms in her possession at a time when prostitution advertisements for her were posted online.

In addition, during jury selection, before trial, and at the end of trial, the district court instructed the jury that the indictment was not evidence (DE:203:19, 157; DE:206:96). Those instructions mitigated any possible bias that might have resulted from the venire hearing part of one charge from the original indictment. *See Trujillo*, 146 F.3d at 843 (explaining district court's curative instruction after a juror stated be was a corrections officer who may have seen one of the defendants reduced the possibility of juror bias); *see also United States v. Anderson*, 329 F. App'x 878, 887 (11th Cir. 2009) (noting district court's jury instructions mitigated any possibility of unfair prejudice that could have resulted from the jury seeing an unredacted indictment); *United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006) (holding district court did not need to strike venire after it read aloud a charge from a prior indictment containing additional allegations, because those extra allegations were mitigated by instruction that the indictment was not evidence).

Accordingly, the district court did not manifestly abuse its discretion in declining to strike the venire, and this Court should affirm Brown's convictions.

## VI. The District Court Did Not Err in Denying Brown's *Pro Se* Motions to Dismiss His Indictment under the Speedy Trial Act.

Brown's argument that the district court erred by denying his five *pro se* motions to dismiss under the Speedy Trial Act, 18 U.S.C. § 3161(b) (the Act), fails on multiple fronts.

Under the Act, a defendant's trial must begin within 70 days from the later of his indictment or his arraignment on that indictment. 18 U.S.C. § 3161(c)(1). But the Act provides that certain time periods are excluded from that 70-day period. *See* 18 U.S.C. § 3161(h). For example, the Act excludes the time that the district court spends resolving pretrial motions and the time included in an ends-of-justice continuance. *Id.*; *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002).

A district court can order an ends-of-justice continuance where, among other reasons, the failure to grant the continuance would "result in a miscarriage of justice" or a refusal to continue the case would unreasonably deny either party time for "effective preparation." 18 U.S.C. § 3161(h)(7). When a district court orders an ends-of-justice continuance, it must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of [a] continuance outweigh the best interests of the public and the

defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). While those findings "must be expressly made on the record," *United States v. Ammar*, 842 F.3d 1203, 1210 (11th Cir. 2016), the Act "is ambiguous on precisely when those findings must be set forth in the record of the case," *Zedner v. United States*, 547 U.S. 489, 506-07 (2006). Thus, a district court "need not enunciate its findings when it grants the continuance," *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002), and, instead, can make those findings when it rules on the merits of a motion to dismiss under the Act, *Ammar*, 842 F.3d at 1207.

Further, while a district court cannot order an ends-of-justice continuance only because the parties agree to one, there is no requirement that a district court say anything specific when ordering an ends-of-justice continuance. *Ammar*, 842 F.3d at 1210. In *Ammar*, this Court cautioned that it was not opining "as to precisely which or specifically how many words a district court must place on the record before the findings requirement is met," *id.* at 1212, but this Court also noted, "[i]t is simple enough for a district court to create a template that sets out exactly the statutory words required to be used, and to recite those words to explain a continuance that is otherwise based on the factors set out in the statute," *id.* at 1211 n.6.

And, finally, a defendant can waive his argument that his indictment should be dismissed under the Act. The Act places the burden of challenging trial

continuances on the defendant, mandating, "[f]ailure [] to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section." 18 U.S.C. § 3162(a)(2). Accordingly, this Court has routinely refused to hear speedy trial claims that were not properly raised in the district court. *See, e.g.*, *United States v. Register*, 182 F.3d 820, 828 (11th Cir. 1999); *United States v. Stitzer*, 785 F.2d 1506, 1520 (11th Cir. 1986). And this Court will not consider speedy trial claims based on continuances ordered after the motion to dismiss was filed unless the defendant renews his motion to dismiss before his trial begins. *United States v. Mathis*, 96 F.3d 1577, 1579 (11th Cir. 1996) ("As the motion was never renewed, there is no question of counting as delay any subsequent periods."); *see also United States v. Serrano*, 197 F. App'x 906, 910-11 (11th Cir. 2006) (explaining this Court could not consider "claims based on delays occurring after a motion to dismiss was filed" if "that motion was not renewed prior to trial").

Brown waived any potential claim under the Act, and, even if he had not, any potential claim would fails on its merits.

### A. The District Court Properly Denied Brown's *Pro Se* Motions Because He Was Represented by Counsel.

Because Brown filed all his motions to dismiss under the Act *pro se* while he was represented by counsel, the district court properly denied them under Southern District of Florida Local Rule 11.1(d)(4). *See United States v. Miller*, 796 F. App'x

582, 584 (11th Cir. 2019); *United States v. Dale*, 618 F. App'x 494, 497-98 (11th Cir. 2015). That rules states,

> [w]henever a party has appeared by attorney, the party cannot thereafter appear or act on the party's own behalf in the action or proceeding, or take any step therein . . . ; provided, that the Court may in its discretion hear a party in open court, notwithstanding the fact that the party . . . is represented by an attorney.

Southern District of Florida Local Rule 11.1(d)(4). Thus, because Brown filed all his *pro se* motions while represented by counsel, the district court lacked authority to consider those written arguments. Indeed, while Brown was filing those motions to dismiss, his counsel was requesting more trial continuances, explaining that they needed more time to prepare Brown's defense, because Brown switched his court-appointed counsel five times before trial and because Brown was often uncooperative (DE:36; DE:83; DE:88; DE:137).

That is the end of the matter—this Court can affirm the district court for any reason on the record and that rule provides a reason to deny all of Brown's motions to dismiss under the Act. *See United States v. Issacson*, 752 F.3d 1291, 1300 n.5 (11th Cir. 2014).

### B. The District Court's Ends-of-Justice Continuances Were Excluded under the Speedy Trial Act.

Even if the district court had authority to consider Brown's challenges to the ends-of-justice continuances, those challenges would lack merit because the district

court supported its continuances with on-the-record findings that the ends of justice that they served outweighed the best interests of the public and Brown in speedy trial.

To address the merits of any argument Brown could make under the Act, this Court must unravel when the district court ordered ends-of-justice continuances, when Brown moved to dismiss his indictment under the Act, and which continuances he challenged. The below chart sets out the relevant procedural history.

| Date | Speedy Trial Act Related Event | Excluded Days |
|---|---|---|
| **Feb. 14, 2020** | Brown was arraigned (DE:11). | |
| Feb. 28, 2020 | Brown filed a *pro se* motion to dismiss under the Act (DE:27).<br><br>On March 4, 2020, the district court denied Brown's motion under Local Rule 11.1(d)(4) because Brown had counsel (DE:29). | **Feb. 28, 2020 – Mar. 4, 2020** |
| Mar. 17, 2020 | Brown's new counsel moved to continue his trial until May 11, 2020 (DE:36).<br><br>The district court ordered an ends-of-justice continuance, specifying the "ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" because "defense counsel needed additional time to prepare" (DE:37). | **Mar. 17, 2020 - May 11, 2020** |
| Apr. 28, 2020 - Apr. 19, 2021 | The district court ordered ends-of justice continuances, adopting the Southern District of Florida Administrative Orders that continued all jury trials from March 30, 2020, through September 6, 2021, all of which specified that "the ends of justice served by taking this action" to protect the public during | **Mar. 30, 2020 – Sept. 6, 2021** |

| | | |
|---|---|---|
| | the COVID-19 pandemic "outweigh the interests of the parties and the public in a speedy trial" (DE:41; DE:45; DE:47; DE:52; DE:55; DE:60). | |
| Apr. 26, 2021 | The government moved to continue trial until September 13, 2021, "due to the ongoing pandemic and the availability of the parties" (DE:61).<br><br>The district court ordered an ends-of-justice continuance, specifying the "ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:62). | **Sept. 6, 2021 – Sept. 13, 2021** |
| June 7, 2021 | After a status conference (DE:66), the district court ordered an ends-of-justice continuance, specifying, "pursuant to 18 U.S.C. § 3161(h)(7), that the ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:67). | **Sept. 13, 2021 – Sept. 27, 2021** |
| July 6, 2021 | The government moved to continue trial until Oct. 5, 2021, because the prosecutor was traveling from Sept. 28 through Oct. 4, 2021 (DE:69).<br><br>The district court extended the continuance until October 5, 2021 (DE:71). | **Sept. 27, 2021 – Oct. 5, 2021** |
| July 26, 2021 | Brown filed a *pro se* motion to dismiss under the Act (DE:73). Brown challenged the district court's order continuing his trial from Sept. 27, 2021, until October 5, 2021, arguing that the travel schedule of the prosecutor was not a proper ground for a continuance (DE:69).<br><br>The district court denied that motion to dismiss (DE:79). | |

| | | |
|---|---|---|
| Sept. 17, 2021 | Brown moved to continue his trial to January 2022 because his new counsel needed more time to prepare (DE:82).<br><br>The district court ordered an ends-of-justice continuance, specifying, "pursuant to 18 U.S.C. § 3161(h)(7), that the ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:84). | **Sept. 17, 2021 – Jan. 25, 2022** |
| Sept. 27, 2021 | Brown filed a *pro se* motion to dismiss under the Act, arguing that the Southern District of Florida orders continuing all trials during COVID-19 were made in violation of the Act (DE:86).<br><br>The district court struck that motion under Local Rule 11.1(d)(4) because Brown was represented by counsel (DE:87) | |
| Jan. 20, 2022 | Brown moved to continue his trial until May 2022, explaining that his counsel needed more time to prepare, both because of COVID-19 quarantines and because Brown was uncooperative (DE:88).<br><br>On Jan. 24, 2022, the district court ordered a continuance (DE:90). | **Jan. 20, 2022 – May 16, 2022** |
| Feb. 14, 2022 | Brown filed a *pro se* motion to dismiss under the Act, generally challenging the continuances granted since September 2021 (DE:93).<br><br>The district court struck the motion to dismiss under Local Rule 11.1(d)(4) because Brown was represented by counsel (DE:94). | |
| Apr. 26, 2022 | Brown filed a *pro se* motion to dismiss under the Act, arguing the January 24, 2022, continuance was invalid because the district court did not state its reasons (DE:111). | |

| | | |
|---|---|---|
| | After a hearing, district court denied Brown's motion to dismiss (DE:119). | |
| May 16, 2022 | Brown's newly assigned counsel moved to continue trial, explaining he needed more time to prepare (DE:137).<br><br>The district court ordered an ends-of-justice continuance, specifying, "pursuant to 18 U.S.C. § 3161(h)(7), that the ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:140). | **May 16, 2022 – July 11, 2022** |
| June 28, 2022 | The district court ordered an ends-of-justice continuance, specifying, "pursuant to 18 U.S.C. § 3161(h)(7), that the ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:147). | **June 28, 2022 – Aug. 8, 2022** |
| **Aug. 8, 2022** | Brown's trial began (DE:163). | |

As the above chart shows, less than 70 non-excluded days passed between Brown's arraignment and trial. Before the COVID-19 pandemic shuttered jury trials in the Southern District of Florida on March 30, 2020, only 26 non-excluded days had elapsed since Brown's arraignment (February 14 through February 28, 2020, and March 4 through March 17, 2020). The remaining time between Brown's February 11, 2020, arraignment and March 30, 2020, were excluded under the Act because the district court was deciding a pretrial motion and because the district court entered an ends-of justice continuance on March 17, 2020, which said that the "ends of justice served by this continuance outweigh the best interests of the public

and the Defendant in a speedy trial" because "defense counsel needed additional time to prepare" (DE:37). Brown never challenged that continuance before the district court, thus he waived any challenge to it. *See* 18 U.S.C. § 3162(a)(2). In addition, the order's explicit ends-of-justice finding that mirrored the statutory language complied with § 3161(h)(7)(A). *See Ammar*, 842 F.3d at 1211 n.6.

Then, from March 30, 2020, through September 6, 2021, in response to the COVID-19 pandemic, the Southern District of Florida continued all jury trials in a series of administrative orders. *See* Southern District of Florida Administrative Order 2021-65 (July 8, 2021). Those administrative orders stated that all jury trials were continued to protect the public health and safety and specified that "the Court finds that the ends of justice served by taking that action outweigh the interests of the parties and the public in a speedy trial" and that the orders "incorporated by reference" that ends-of-justice finding "as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *See id.*

Although this Court recently declined to decide whether the Southern District of Florida Administrative Orders continuing all jury trials during the COVID-19 pandemic contained an adequate justification for an ends-of-justice continuance, *United States v. Dunn*, --- F.4th ----, 2023 WL 6571302, at *10 (11th Cir. Oct. 10, 2023), every other Circuit to address the issue has held that similar orders issued

during the COVID-19 pandemic provided sufficient justification to exclude the time under the Act's ends-of-justice exception. *United States v. Keith*, 61 F.4th 839, 844, 851 (10th Cir. 2023); *United States v. Leveke*, 838 F.4th 662, 670 (8th Cir. 2022); *United States v. Torres*, 995 F.3d 695 (9th Cir. 2021); *United States v. Roush*, No. 21-3820, 2021 WL 668969, *2 (6th Cir. Dec. 7, 2021). And those cases are well reasoned. As this Court noted in *Ammar*, a district court can satisfy the Act's ends-of-justice findings requirement when by reciting the statutory words "the ends of justice served by granting [the] continuance outweigh the best interests of the public and the defendant in a speedy trial" as justification an ends-of-justice continuance. 842 F.3d at 1211 n.6. Thus, all the days from March 20 through September 6, 2021, were properly excluded under the Act.

And, after September 6, 2021, the district court issued a series of continuances, all of which satisfied the requirements for an ends-of-justice continuance.

First, the district court continued Brown's trial until September 13, 2021, ordering an ends-of-justice continuance that specified, "the ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:62). While Brown did not challenge that order before the district court, even if he had, his challenge would have failed because that explicit ends-of-justice finding satisfied § 3161(h)(7)(A). *Ammar*, 842 F.3d at 1211 n.6.

Second, the district court continued Brown's trial from September 13 until September 27, 2021, ordering an ends-of-justice continuance that specified, "pursuant to 18 U.S.C. § 3161(h)(7), that the ends of justice served by this continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:67). While Brown did not challenge that order before the district court, even if he had, his challenge would have failed because that explicit ends-of-justice finding satisfied § 3161(h)(7)(A). *Ammar*, 842 F.3d at 1211 n.6.

Third, after the government alerted the district court that its recent continuance posed a scheduling problem because of prior travel arrangements, the district court ordered a continuance from September 27 through October 5, 2021 (DE:71). Brown challenged that continuance order in his July 26, 2021, *pro se* motion to dismiss for failing to state its supporting reasons (DE:73). But that challenge fails for two reasons. Even if that eight days included in that continuance are not excluded under the Act, then only 34 non-excluded days would have elapsed since Brown's arraignment, far less than the 70-day limit in the Act. And that continuance order was rendered moot by the district court's next order, which continued the trial from September 17, 2021, until January 25, 2022 (DE:84).

Fourth, the district court continued Brown's trial from September 17, 2021, until January 25, 2023, ordering an ends-of-justice continuance that specified, "pursuant to 18 U.S.C. § 3161(h)(7), that the ends of justice served by this

continuance outweigh the best interests of the public and the Defendant in a speedy trial" (DE:84). That explicit ends-of-justice finding satisfied § 3161(h)(7)(A). *Ammar*, 842 F.3d at 1211 n.6.

Fifth, on January 24, 2022, the district court issued a continuance from January 20, 2022, to May 16, 2022, after Brown's counsel requested one, yet again, because Brown was uncooperative (DE:88; DE:90). In one of his *pro se* motions to dismiss, Brown argued that this continuance was improper, because the district court did not make an ends-of-justice finding (DE:90). Brown is correct that the district court did not make a finding in its written order, but the district court discussed Brown's *pro se* motion to dismiss during a calendar call (DE:150:5-6). During that calendar call, the district court said that Brown's *pro se* motions were repetitive, denied this final motion "with prejudice" for the same reasons given "in its previous rulings," and implored Brown to stop his *pro se* filings (DE:150:5-6). That, taken with Brown's counsel making yet another request that the district court continue Brown's trial because Brown was uncooperative, surpasses the low hurdle that district courts have for making a written or oral pronouncement that a reason supports its continuance beyond merely the parties's agreement. *See Zedner*, 547 U.S. at 506-07; *Ammar*, 842 F.3d at 1210.

Brown never again moved to dismiss his indictment for violating the Act, thus he waived any challenge to the timeliness of his trial under the Act after May 16,

2022. *Mathis*, 96 F.3d at 1579. As a result, on August 8, 2022, when Brown's jury trial began, far less than 70 non-excluded speedy trial days had elapsed since his arraignment.

Accordingly, this Court should affirm Brown's convictions.

## Conclusion

For these reasons, the district court's decision should be affirmed.

Respectfully submitted,

Markenzy Lapointe
United States Attorney

By: /s/Nicole D. Mariani
Nicole D. Mariani
Assistant United States Attorney
99 N.E. 4th Street, #500
Miami, FL 33132
(305) 961-9285
nicole.mariani@usdoj.gov

Daniel Matzkin
Chief, Appellate Division

Robert Juman
Assistant United States Attorney

Of Counsel

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,643 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016, 14-point Times New Roman font.

## Certificate of Service

I hereby certify that four copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 17th day of November 2023, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on Bradley Evan Horenstein, Esq. counsel for Kerby Brown, Jr.

*/s/ Nicole Mariani*
Nicole Mariani
Assistant United States Attorney

***cbe***